UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MISTY MAXWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-03239-DLP-JPH |
| | ) |
| THE LAW OFFICE OF JENNIFER | ) |
| MCCOY, P.C., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter comes before the Court on the Defendant's Motion to Dismiss Plaintiff's Amended Class Action Complaint, Dkt. [22], and Plaintiff's Motion for Leave to Amend Complaint, Dkt. [25]. Both motions are fully briefed and ripe for decision. For the reasons that follow, Plaintiff's motion is **GRANTED IN PART**, and Defendant's motion is **DENIED AS MOOT**.

**I.   Background**

On December 18, 2020, Plaintiff Misty Maxwell filed a putative class action suit in this Court alleging a violation of the Fair Debt Collection Practices Act ("FDCPA") under Section 1692e(5) related to an alleged debt arising from a residential lease agreement with Metropolitan Fishers. (Dkt. 1; Dkt. 26 at 1). Specifically, Plaintiff's class claim alleged that Defendant falsely stated that late charges could increase the amount owed on the alleged debt. (Id.). This complaint also stated that Plaintiff disputed the alleged debt. (Id. at ¶ 21). Plaintiff then filed an amended complaint on January 13, 2021, which is now the operative complaint

for this matter. (Dkt. 6). The Amended Complaint added Paragraph 32, which indicates that Plaintiff suffered anxiety and concern upon receipt of the Defendant's dunning letter, and an attached affidavit of the Plaintiff which also states that she was anxious and upset as a result of the Defendant's threatened late fees. (Dkt. 6). On April 16, 2021, the Plaintiff pulled her TransUnion credit report and discovered that the Defendant had failed to report her debt as "disputed." (Dkt 26 at 2).

On April 20, 2021, the Undersigned issued an order requesting that the parties submit briefing on the effect of the series of FDCPA cases related to standing that were decided by the Seventh Circuit in late 2020[1]. (Dkt. 13). On April 23, 2021, the Defendant answered the Plaintiff's amended complaint, (Dkt. 18), and on May 7, 2021, the Defendant filed the present motion to dismiss the Plaintiff's amended complaint for lack of standing. (Dkt. 22). Also on May 7, 2021, the Plaintiff filed a motion for leave to amend her complaint, seeking to allege an additional violation of FDCPA Section 1692e(8) related to Defendant's failure to report the alleged debt as "disputed." (Dkt. 25-1 at ¶¶ 21-29). Defendant challenges Plaintiff's standing as to both Section 1692e(5) and (8) claims in the proposed amended complaint, using the same arguments from the motion to dismiss. (Dkt. 27). Accordingly, the Undersigned will address the motion to amend the complaint first.

## II.  Legal Standard

"A party may amend its pleading once as a matter of course," Fed. R. Civ. P.

---

[1] *See Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020); *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020); *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir. 2020).

15(a)(1), which the Plaintiff has already done, (Dkt. 6). Thus, the Plaintiff may now amend her pleading only with the Defendant's written consent or with leave of court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. A district court may, however, deny a plaintiff leave to amend her complaint if there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The decision of whether to grant a motion to amend pleadings is discretionary, and the court need only show reasonable justification for its denials of such motions to avoid abusing that discretion. *Id*.

A motion to amend a complaint "is futile 'if the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). In other words, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014). A motion to amend is brought in bad faith when it is an "attempt to supplant entirely the original claims to avoid a dismissal on the merits," rather than to "'save' or supplement the original claims." *Vitrano v. United States*, 721 F.3d 802, 807 (7th Cir. 2013). "Relevant to the bad faith determination are whether it is likely Plaintiff knew the facts pertinent to the amendment before the

3

original complaint was filed and whether Plaintiff is trying to forum shop." *Member Select Ins. Co. v. Cub Cadet, LLC*, No. 2:16-cv-436-JD-PRC, 2017 WL 563161, at *2 (N.D. Ind. Feb. 13, 2017).

### III.  Discussion

In response to Defendant's Motion to Dismiss, Plaintiff also filed a Motion for Leave to Amend the Complaint in order to add an additional FDCPA claim. (Dkt. 25). In addition to her Section 1692e(5) claim that the Defendant made a false threat as to the possibility of additional late fees, Plaintiff seeks leave to allege that the Defendant failed to report her residential lease debt as "disputed" to TransUnion credit reporting agency, in violation of Section 1692e(8), which caused her emotional distress and negatively impacted her credit rating and ability to obtain additional credit. (Dkt. 25-1 at 2-3). The Defendant contends that the Plaintiff's motion to amend should be denied because the proposed amendment is futile, in that it does not establish standing for either the original claim or the proposed additional claim, and was brought in bad faith. (Dkt. 27 at 4). Because the Defendant challenges the standing of both claims alleged in the proposed Second Amended Complaint, which encompasses the only claim alleged in the operative complaint, the Court will address the proposed amended complaint first. The Court will evaluate Plaintiff's standing for each claim separately.

### A. Standing

Standing is a threshold issue arising under the federal courts' Article III authority to resolve "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1; *see*

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The doctrine of standing was developed for the purpose of ensuring that the federal courts do not exceed their constitutional authority, which it accomplishes by limiting the category of litigants empowered to maintain a lawsuit in federal court. *Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S.Ct. 1540, 1547 (2016). "Article III standing is jurisdictional and cannot be waived." *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020). "The plaintiff must establish standing at the time suit is filed and cannot manufacture standing afterwards. The Article III standing inquiry remains open to review at all stages of the litigation." *Pennell v. Glob. Tr. Mgmt. LLC,* 990 F.3d 1041, 1044 (7th Cir. 2021) (internal citations and quotation marks omitted). "Article III standing asks whether the complaint 'clearly allege[s] facts' demonstrating that [the plaintiff] has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Nettles*, 983 F.3d at 899 (quoting *Spokeo*, 136 S.Ct. at 1547). Standing is not dispensed in gross; a plaintiff must demonstrate standing for each claim presented and for each form of relief sought (*e.g.*, injunctive relief and damages). *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (citing *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352 (2006)).

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 136 S.Ct. at 1547. At the pleading stage, factual allegations of injury resulting from the defendant's conduct may suffice, and the allegations of fact – though they must be clearly alleged – need only "plausibly

5

suggest" each element of standing, with the court drawing all reasonable inferences in the Plaintiff's favor. *Bazile*, 983 F.3d at 278. However, as standing is more than a mere pleading requirement, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Either a party or the court may question the existence of standing. *See Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986). If a Plaintiff fails to meet the burden of proof for each challenged element of standing, the court will find that it lacks subject matter jurisdiction to hear the case and must dismiss it. Fed. R. Civ. P. 12(h)(3); *Aljabri v. Holder*, 745 F.3d 816, 818 (7th Cir. 2014).

Within the last year, a number of decisions have been issued regarding the standing requirements for FDCPA cases. The Undersigned finds it prudent to review some of those cases, as their holdings directly impact the case at hand.

A plaintiff must allege more than a mere violation of a statutory right. *Larkin*, 982 F.3d at 1066. In addition to alleging a statutory violation, a plaintiff must also allege that the violation harmed her or "presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (quoting *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017)); *see also Spokeo*, 136 S. Ct. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation."). "For standing purposes, therefore, an important difference

exists between (i) a plaintiff 's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff 's suffering concrete harm because of the defendant's violation of federal law." *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2205 (2021).

In *Larkin*, the Seventh Circuit found that the plaintiffs failed to show a concrete harm where they "generally alleged . . . that certain statements in [the defendant]'s collection letters were false, deceptive, or misleading, or unfair and unconscionable, in violation of §§ 1692e and 1692f," but did not allege any harm or appreciable risk of harm from the statutory violation. 982 F.3d at 1066. In dicta, the court listed certain allegations that would have supported a finding of a concrete injury, including alleging that the defendant had caused the plaintiffs to pay debts that were not owed or had created an appreciable risk of doing so; alleging that the plaintiffs "relied to their detriment on the contents of the letters;" and alleging that the plaintiffs would have "pursued a different course of action were it not for the statutory violations." *Id*. The court ultimately affirmed the district court's dismissal of the case for lack of subject matter jurisdiction. *Id*. at 1067.

This Court has applied the Seventh Circuit's standing requirements in a few recent cases. In *Pucillo v. Nat'l Credit Sys., Inc.*, this Court held that "without more, confusion, stress, concern, and fear are not enough to support a concrete injury in FDCPA Section 1692e and Section 1692c cases. . . ." No. 1:19-cv-00285-TWP-DML, 2021 WL 1061191, at *4 (S.D. Ind. Mar. 19, 2021); *Kinnick v. Med-1 Sols., LLC*, No. 1:19-cv-02563-TAB-SEB, 2021 WL 2291153, at *1 (S.D. Ind. June 4, 2021) (noting

7

that mere annoyance, intimidation, doubt, confusion, or stress, without more, fall short of concrete emotional harm adequate to show standing, but physical manifestations of emotional distress may be sufficient).

### i.    Section 1692e(5) claim – False Threat

Defendant has challenged Plaintiff's standing as to her Section 1692e(5) claim, both in the operative complaint and in the proposed second amended complaint. Specifically, Defendant argues that Plaintiff has not demonstrated an injury in fact because she merely alleges anxiety and concern as a result of receiving Defendant's dunning letter, with no actual harm. (Dkt. 23 at 10). In response, Plaintiff maintains that her anxiety and concern are sufficient to form an injury in fact. (Dkt. 33).

The injuries contemplated by the FDCPA involve the deceptive abuse of debt collection practices by debt collectors to induce or prevent certain actions or decisions by debtors. *See Larkin,* 982 F.3d at 1066; *Gunn,* 982 F.3d at 1070; *Brunett,* 982 F.3d at 1068. To satisfy the first element of standing, an FDCPA plaintiff must allege a concrete injury in her complaint. *Larkin,* 982 F.3d at 1065. Here, Ms. Maxwell alleges that Defendant's dunning letter caused her anxiety which constitutes an injury in fact. Specifically, in the Plaintiff's proposed second amended complaint, Ms. Maxwell states that "[b]ased upon the letter she believed that late fees would be added to the total amount being collected, causing her anxiety and concern." (Dkt. 25-1 at ¶ 40). It further stated:

> "Defendant's . . . threat of late charges could make an unsophisticated consumer alter his/her course of action and such

8

> a threat would make the unsophisticated consumer believe that s/he did not have the rights Congress had granted him or her under the FDCPA. Defendant's violation is a material violation of the FDCPA that could lead a consumer to alter his or her course of action as to whether to pay a debt."

(Id. at ¶ 48). The question for the Court is whether this allegation articulates an injury that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.*, 136 S.Ct. at 1548. "An injury is particularized if it affects the [P]laintiff in a personal and individual way, and it is concrete if it is real, and not abstract." *Pennell,* 990 F.3d at 1044 (plaintiff's stress and confusion did not amount to a concrete injury because the dunning letter did not cause the plaintiff to change her course of action or take a detrimental step); *see also Brunett*, 982 F.3d at 1068 ("A debtor confused by a dunning letter may be injured if she acts, to her detriment, on that confusion—if, for example, the confusion leads her to pay something she does not owe . . . . But the state of confusion is not itself an injury.") When looking at the second aspect of establishing an injury in fact, the Supreme Court has explained that fear of a future harm is not an injury in fact unless the future harm is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

Here, Ms. Maxwell alleges that Defendant's dunning letter caused her anxiety and concern. The Seventh Circuit makes clear, however, that without accompanying detrimental action, a plaintiff's confusion, annoyance, and intimidation are not enough to establish concrete harm. *Gunn*, 982 F.3d at 1071. Thus, this Court must examine whether the anxiety and confusion Ms. Maxwell

9

suffered related to the dunning letter is connected to some detrimental action she took or risked taking.

In the proposed amended complaint, the Plaintiff does not allege that *she* altered her course of action as a result of the Defendant's letter. She conceded that she was not assessed any late fees after she vacated the apartment and that Metropolitan was awarded a judgment in state court that did not include late fees incurred after she vacated the apartment. (Id.) According to the Defendant, that state court decision was a default judgment, as the Plaintiff did not take any action in response to the dunning letter or the Defendant's suit, and had not paid any of her debt at the time of filing this action. (Dkt. 23 at 3).

Like the plaintiffs in *Larkin*, *Brunett*, *Gunn*, *Spuhler*, and *Markakos*, Ms. Maxwell has not paid any debt that she did not owe, and in fact may not have paid any of her debt at all. Like the plaintiffs in *Casillas*, *Larkin*, *Brunett*, *Spuhler*, *Smith*, and *Pennell*, Ms. Maxwell did not allege that her decisions about managing her debt were affected by the dunning letter. Also, like the plaintiff in *Gunn*, Ms. Maxwell did not allege that the letter negatively affected her credit rating or ownership interests. Unlike the plaintiff in *Bazile*, Ms. Maxwell clearly states in her proposed amended complaint that she knew her debt was not accruing additional fees. (Dkt. 25-1 at ¶¶ 41-39). Ms. Maxwell did not allege that she detrimentally relied on the information in the letter or that the letter affected her decisions about handling her debt. In fact, she took no action, which was what led to the Defendant's suit in state court. The reasonable inference would be that a threat of

10

further late charges would induce a debtor to pay sooner than they otherwise would, but Ms. Maxwell took no action to pay, contest, or clarify her debt with the Defendant debt collector or in the state court action. There is consequently no room for the Court to infer detrimental reliance.

Unlike the plaintiff in *Buchholz*, Ms. Maxwell received a letter that she interpreted as threatening future harmful action, but she did not pay her debt. However, Ms. Maxwell was aware at the time she filed her complaint that additional late charges beyond her move-out date had not been added to her debt, and that the future imposition of late charges would be unlawful. (Dkt. 6 at ¶¶ 33-39). In fact, if she had been unaware of the Defendant's inability to assess further late charges, she could not have filed this action. Thus, the imposition of additional late fees presents neither an actual nor an imminent harm to Ms. Maxwell. The threat of future injury was not "certainly impending" at the time of her complaint, as required by *Clapper*, and therefore did not constitute an injury in fact.

Ms. Maxwell did not allege physical manifestations of her emotional distress, did not pay any debt that she did not owe, allege that her debt management decisions were affected by the dunning letter, allege that the letter negatively affected her credit rating or ownership interests, or allege that she detrimentally relied on the information in the letter. Also, Ms. Maxwell has failed to show a certain and impending threat of future harm. Thus, the Plaintiff's Section 1692e(5) claim and operative complaint do not adequately meet the minimum requirements for standing, and the Section 1692e(5) claim must be dismissed for lack of

jurisdiction.

### ii. Section 1692e(8) claim – Failure to Report the Debt as Disputed

Defendant has also challenged Plaintiff's standing for her Section 1692e(8) claim, arguing that Plaintiff has alleged a statutory violation without an accompanying concrete personal injury. (Dkt. 27 at 5-6). Plaintiff argues that her allegation of impact to her credit and credit rating are sufficient to prove an injury in fact. (Dkt. 32 at 5-6).

Establishing standing is Ms. Maxwell's burden and "must be secured at each stage of the litigation" because it is an essential part of her case. *Id.* at 278. "[A]s the litigation progresses, [however], the way in which the plaintiff demonstrates standing changes." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007–08 (7th Cir. 2021) (citing *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020). A challenge to standing—a jurisdictional requirement—can take the form of a facial or a factual attack on the plaintiff's allegations. A facial attack "tests whether the allegations, taken as true, support an inference that the elements of standing exist," and a factual attack "test[s] the existence of jurisdictional facts underlying the allegations." *Bazile*, 983 F.3d at 279.

#### a. Facial Attack on Ms. Maxwell's Section 1692e(8) Claim

First, Defendant raises a facial challenge to the proposed amendment, contending that Plaintiff's proposed amended complaint fails to "facially plead a concrete injury" that resulted from Defendant's alleged violation of Section 1692e(8). (Dkt. 27 at 4). To resolve this issue, the Court must accept "all well-

12

pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Prairie Rivers*, 2 F.4th at 1007; *see also Bazile*, 983 F.3d at 278 ("[T]he allegations of fact—though they must be clearly alleged —need only "plausibly suggest" each element of standing, with the court drawing all reasonable inferences in the plaintiff's favor.").

Ms. Maxwell relies on *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 342 (7th Cir. 2018) to support her claim of standing. In *Evans*, the plaintiffs filed suit under FDCPA § 1692e(8) for the failure of a debt collector to report that a debt was disputed to a credit reporting agency. 889 F.3d at 342. The Seventh Circuit held that the plaintiffs suffered "a real risk of financial harm caused by an inaccurate credit rating." *Id*. at 345 (quoting *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017)). The court stated that "[a]n inaccurate credit report produces a variety of negative effects. For instance, it is 'a red flag to the debtor's other creditors and anyone who runs a background or credit check, including landlords and employers.'" *Evans*, 889 F.3d at 345 (quoting *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1082 (7th Cir. 2013)). The court noted that a debt collector's failure to inform a credit reporting agency that a debt is disputed is always a material violation of the FDCPA. Importantly, the plaintiffs in *Evans* explicitly alleged a risk of concrete financial harm as a result of credit reporting agencies lowering their credit score. *Evans*, 889 F.3d at 346. Thus, the Seventh Circuit found that the plaintiffs had standing to sue. *Id*.

The court noted that "§ 1692e(8) 'requires no notification by the consumer . . .

and instead, depends solely on the debt collector's knowledge that a debt is disputed, regardless of how that knowledge is acquired.'" *Evans*, 889 F.3d at 347 (quoting *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998)). The dispute need not be valid or reasonable, so long as it is clear to the debt collector that the debtor disputes the debt. *Evans*, 889 F.3d at 347. However, "[i]f after receiving verification of the debt, the consumer has no grounds for contesting it, the fact that he 'disputed' it will not cancel his liability." *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010).

Here, like the plaintiffs in *Evans*, Ms. Maxwell has explicitly alleged that the Defendant's failure to report her debt as disputed "had a negative impact on [her] credit rating, impaired [her] credit rating and [her] ability to obtain credit." (Dkt. 25-1 at 3). Although she provided no supporting evidence, she explicitly disputed the debt in her complaint. (Dkt. 1 at ¶ 21). This allegation by itself is sufficient to plead an injury in fact under the rule that "[a]t the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice' . . . because '[courts] "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."'" *Bazile*, 983 F.3d at 278 (quoting *Lujan*, 504 U.S. at 561). However, because the Defendant has also raised a factual attack to Plaintiff's standing claim, the Plaintiff must now support "each controverted element of standing with competent proof," which the Seventh Circuit described as "a showing by a preponderance of evidence, or proof to a reasonable probability that standing exists." *Bazile*, 983 F.3d at 278.

14

          *ii.*     *Factual Attack on Ms. Maxwell's Section 1692e(8) Claim*

The Defendant challenges the facts underpinning Plaintiff's claim of standing, namely that a disputed debt was not listed on a credit report as disputed. (Dkt. 27 at 5-10). Specifically, Defendant argues that the debt in question is valid, and that Plaintiff cannot be injured by a failure to report a valid debt as disputed. (Id.). No harm could have resulted from failing to report the debt as disputed, because it is highly unlikely that Plaintiff's credit could be negatively affected by a valid debt being reported. (Id.).

Because Ms. Maxwell's alleged facts are being questioned, the Court "may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." *Bazile*, 983 F.3d at 279. At this time, Ms. Maxwell has not shown evidence to contradict the Defendant's contention that the residential lease debt is valid. The Plaintiff's debt with Metropolitan Fishers is supported by a judgment of the Hamilton County Superior Court. (*See* Dkt. 6, ¶ 39; Dkt. 25-1, ¶ 47). In addition, Ms. Maxwell attached to the operative complaint an affidavit of indebtedness signed by the Defendant that affirms the amount of debt the Plaintiff owes as of July 21, 2020. (Dkt. 6-3 at 9). While a debt need not be invalid for a debtor to appropriately dispute it, (*see Evans*, 889 F.3d at 347), if the debt is valid, Ms. Maxwell's dispute will not cancel it. *DeKoven*, 599 F.3d at 582.

Ms. Maxwell's proposed complaint is supported only by a mere statement that she contests the debt and that the Defendant's failure to report the debt as disputed affected her credit. Mere allegations do not constitute a preponderance of

15

the evidence. Ms. Maxwell has failed to factually show a concrete injury that would confer standing under the heightened burden of proof applicable to the Defendant's standing challenge. Without supportive evidence of the effect of the Defendant's actions on the Plaintiff's credit, the Plaintiff's motion to amend would be futile.

Nevertheless, the Court finds it reasonable to infer that the Plaintiff has some factual basis for contending that her debt has affected her credit, especially given the infancy of this case and the fact that the parties have not yet conducted discovery. As such, the Court exercises its discretion the same as it did in *Patterson* and the Seventh Circuit did in *Bazile*, and shall permit Plaintiff the opportunity to proceed with discovery in order to present evidence that would establish standing for her new Section 1692e(8) claim. *See Patterson*, 2021 WL 1124610, at *6; *Bazile*, 983 F.3d at 281. Because the appropriate mechanism to resolve this factual dispute regarding standing is an evidentiary hearing, *Bazile*, 983 F.3d at 277, the Court will reopen discovery through November 18, 2021 for the limited purpose of conducting discovery related to the issue of standing. Once that discovery has taken place, if the facts to support standing are disputed, the Court will hold an evidentiary hearing as advised by the Seventh Circuit in *Bazile*, 983 F.3d at 277.

### B. Bad Faith

Defendant also contends that Plaintiff's motion to amend the complaint should be denied because that request was raised in bad faith. (Dkt. 27 at 11). Defendant maintains that "Plaintiff's counsel is not trying to remedy a legitimate client problem but instead interested in setting up Defendant for 'technical'

16

violations of a consumer protection statute in order to obtain statutory attorney's fees." (Dkt. 27 at 11). The Defendant also stated it believes the Plaintiff included her dispute of the debt in the amended complaint "in order to later bring a separate cause of action to remedy the deficiencies in that complaint." (Id.). The Defendant points to the fact that the Plaintiff took no action after defaulting on her debt other than filing the instant lawsuit. (Id.). According to the Defendant, the Plaintiff did not reach out to it or to her apartment complex, and only informed the Defendant of her dispute of the debt in initiating the present lawsuit. (Id.).

For the Plaintiff to have included the dispute in her complaint in order to "remedy the deficiencies in that complaint," as argued by Defendant (Dkt. 27 at 11), she would have had to know that her initial complaint was deficient before filing. This Circuit's guidance regarding standing in cases alleging FDCPA violations has recently been clarified by the Court on December 14 and 15, 2020.[2] The Plaintiff's initial complaint was filed December 18, 2020, (Dkt. 1), followed by the operative amended complaint on January 13, 2021. (Dkt. 6). It would be reasonable to infer that the Plaintiff believed in good faith that she had standing based on her factual allegations to support standing.

While it is worth noting that Plaintiff has provided little support for the invalidity of her debt, her dispute need not be reasonable to impose the reporting requirement on the debt collector. If, however, Ms. Maxwell knowingly raised a

---

[2] *See Larkin*, 982 F.3d at 1060; *Brunett*, 982 F.3d at 1067; *Gunn*, 982 F.3d at 1069; *Bazile*, 983 F.3d at 274; *Spuhler*, 983 F.3d at 282.

baseless dispute as alleged by the Defendant, this would support the Defendant's contention that the Plaintiff's counsel is "interested in setting up Defendant for 'technical' violations of a consumer protection statute in order to obtain statutory attorney's fees." (Dkt. 27 at 11). The Defendant also raised a valid timing concern by noting that Ms. Maxwell waited until after the Defendant filed its motion to dismiss to seek the amendment of an additional claim. Ultimately, however, the Court finds there is not yet sufficient evidence to support a finding of bad faith. Nevertheless, the Court shall keep the possibility of bad faith in mind moving forward. If additional evidence makes clear that the Plaintiff's counsel was indeed needlessly increasing the cost of litigation, raising frivolous arguments, or baselessly denying factual contentions, sanctions may be raised. The discovery conducted on the issue of standing shall help elucidate this issue.

### IV.  Conclusion

The Plaintiff has not established standing in the operative or proposed amended complaint as to her Section 1692e(5) claim, and the Court now dismisses that claim for lack of jurisdiction. The proposed amended complaint facially establishes standing as to her Section 1692e(8) claim, and although it does not factually establish standing, the Court has chosen to exercise its discretion to allow the Plaintiff to support her claim with evidence sufficient to counter the Defendant's factual challenge to standing. As such, Plaintiff's Motion for Leave to Amend Complaint, Dkt. [25], is **GRANTED IN PART**, and Defendant's Motion to Dismiss Plaintiff's Amended Class Action Complaint, Dkt. [22], is **DENIED AS MOOT**.

Plaintiff shall file her Second Amended Complaint containing her Section 1692e(8) claim within three (3) days of this Order.

Discovery of any matter to be determined in connection with standing shall be completed by November 18, 2021. This case is set for a telephone status conference on November 18, 2021 at 1:30 p.m. (Eastern) to address what further procedures, such as supplemental briefing or an evidentiary hearing, are appropriate to determine standing. Counsel shall attend the conference by calling the designated phone number, to be provided by the Court at a later date.

So ORDERED.

Date: 8/23/2021

*Doris L. Pryor*
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email